IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JULIUS WASHINGTON,<br>#S09629,<br><br>      Plaintiff,<br><br>vs.<br><br>DIETARY MANAGER HARRIS,<br>TINA NEFF,<br>MARY ROGERS,<br>JACQUELINE LASHBROOK,<br>HEALTH CARE UNIT, and<br>PINCKNEYVILLE CORRECTIONAL<br>CENTER,<br><br>      Defendants. | Case No. 17−cv−979−SMY |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Julius Washington, an inmate at Graham Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights that allegedly occurred at Pinckneyville Correctional Center ("Pinckneyville"). Plaintiff claims that the defendants subjected him to unconstitutional conditions of confinement and were deliberately indifferent to his serious medical issues, in violation of the Eighth Amendment. (Doc. 1). This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–

1

> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Complaint and any supporting exhibits, the Court finds it appropriate to allow this case to proceed past the threshold stage.

### **The Complaint**

Plaintiff makes the following allegations in his Complaint (Doc. 1): On September 21, 2016, while working in the Pinckneyville dietary department as an assigned cook, Plaintiff stepped onto a water drainage grate which then flipped inward, causing Plaintiff to fall knee deep into the drain. (Doc. 1, p. 7). The fall also caused Plaintiff's arm to get stuck inside of a cooking kettle until he was able to pull it free and regain his balance. *Id.* This contact with the contents of the cooking kettle, which occurred while the kettle was cooking on high, caused Plaintiff to burn the skin completely off his forearm. *Id.* Plaintiff believes Defendant Harris, a T/A Dietary Manager, Defendant Lashbrook, the Pinckneyville Warden, and Pinckneyville itself "knew of these unsafe grates but refused to fix them." *Id.*

2

After Plaintiff was helped out of the drain by fellow inmates, he sought help from a kitchen supervisor, but none were around. (Doc. 1, p. 8). He eventually found CFFS Wilson and told him what had happened and requested medical attention. *Id.* Wilson called Defendant Health Care Unit ("HCU") and informed then "an inmate had gotten burned and needed medical attention." *Id.* Plaintiff was then sent to the HCU where a doctor and "five to six nurses" examined him and agreed he had a "pretty good burn." *Id.* Defendant Nurse Mary Rogers began Plaintiff's treatment and told him "that the burn would need daily treatment until it healed." *Id.* She also told Plaintiff that he would be added to the inmate call pass line to make it to his daily treatment. (Doc. 1, pp. 8-9). When Rogers finished treating Plaintiff, he was sent back to his housing unit and then back to work, where he learned another inmate had been burned. (Doc. 1, p. 9).

On September 22, 2016, Plaintiff and the other inmate who was burned, Mourey, began daily treatment for their burns. *Id.* Defendant Nurse Tina Neff treated Plaintiff that day and informed him that he would need three weeks of daily treatment for his second degree burn. *Id.* She also told Plaintiff and Mourey that they "should start getting [their] call passes to come over for [their] treatment and not to worry of the hassle trying to make it over without a pass." *Id.* On September 23, 2016, Mourey received one week's worth of call passes, and Plaintiff received none. *Id.* Plaintiff explained to his cell house officer that he needed to be sent for his daily treatment and that he did not have a call pass yet. After the officer checked on Plaintiff's claims, Plaintiff was sent to the HCU. (Doc. 1, pp. 9-10).

Once he arrived at the HCU, Plaintiff explained to Neff how he had trouble making it to his treatment. (Doc. 1, p. 10). Neff responded that Defendant Rogers "probably never got around to submitting [Plaintiff] for the call pass line and she said not to worry she would do it

3

herself." *Id.*

After about a week, Plaintiff had still not been added to the call pass line. *Id.* He was having trouble trying to leave his cell house without a call pass for his daily treatment. *Id.* Because of this, he filed a grievance on September 28, 2016. *Id.* Plaintiff also wrote Defendant Warden Lashbrook a letter that day "explaining everything to her, that [he] was burned in the dietary department and that [he] needed daily treatment for [his] burn and that health would not add [him] to the call pass line, and [he] had issues going over without a call pass." (Doc. 1, pp. 10-11). Plaintiff submitted another grievance on October 10, 2016 after he did not receive a timely response to his first grievance. (Doc. 1, p. 10). Plaintiff was later visited by a nurse on October 14, 2016, well after he no longer needed a call pass because his treatment had ended. *Id.* Plaintiff did not receive a response from Lashbrook to his letter. (Doc. 1, p. 11).

Plaintiff requests declaratory and monetary relief. (Doc. 1, p. 13).

## **Discussion**

The Court begins its § 1915A review with a note about the parties at issue in this case. First, Plaintiff has named Pinckneyville as a defendant. However, his claims against it are barred because the Illinois Department of Corrections ("IDOC"), as a state agency, is not a "person" that may be sued under § 1983. *Thomas v. Illinois*, 697 F.3d 612, 613 (7th Cir. 2012) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989)); *see also* 42 U.S .C. § 1983 ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."). As a division of

IDOC, Pinckneyville is similarly shielded from suit. Plaintiff also names the Pinckneyville Health Care Unit as a defendant in this case. As it is a department or division within Pinckneyville, and thereby IDOC, it too is immune from suit. Pinckneyville and Health Care Unit will therefore be dismissed from this action with prejudice.

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into 2 counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit.

> **Count 1 –** Defendants Harris and Lashbrook subjected Plaintiff to unconstitutional conditions of confinement in violation of the Eighth Amendment when they failed to remedy the dangerous condition of the kitchen water grates that caused Plaintiff's injury.
>
> **Count 2 –** Defendants Neff, Rogers, and Lashbrook showed deliberate indifference to Plaintiff's serious medical need involving a burn he sustained on his arm in violation of the Eighth Amendment.

As discussed in more detail below, Count 1 will be allowed to proceed past threshold. Any other intended claim that has not been recognized by the Court is considered dismissed without prejudice as inadequately pleaded under the *Twombly* pleading standard.

## **Count 1**

To prevail on an Eighth Amendment claim based on inadequate prison conditions, the prisoner must show that (1) the conditions in the prison were objectively "sufficiently serious so that a prison official's act or omission results in the denial of the minimal civilized measure of life's necessities," and (2) prison officials acted with deliberate indifference to those conditions. *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (internal citations and quotation marks omitted); *Farmer v. Brennan*, 511 U.S. 825, 847, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (a prison official violates the Eighth Amendment prohibition against inhumane conditions of

5

confinement if he or she knows of a substantial risk of serious harm to an inmate and fails to take reasonable measures to avoid the harm).

Here, the hazard from the water drains described by Plaintiff may constitute an objectively serious condition. *See Townsend v. Sisto*, 457 F. App'x 653, 654 (9th Cir. 2011) (reversing dismissal under 28 U.S.C. § 1915A when the plaintiff had "alleged that prison officials were aware that the poorly maintained shower floors posed a significant threat to inmate safety yet failed to take reasonable measures to avoid that threat.") (citing *Frost v. Agnos*, 152 F.3d 1124, 1129 (9th Cir. 1998) ("Slippery floors without protective measures could create a sufficient danger to warrant relief.")). Plaintiff's allegations go beyond the facts of the typical slip-and-fall claims that "'almost never serve as the predicate for constitutional violations,'" as there is more at issue here than mere water on a shower floor. *See Pyles v. Fahim*, 771 F.3d 403, 410 n.25 (7th Cir. 2014) (quoting *Coleman v. Sweetin*, 745 F.3d 756, 764 (5th Cir. 2014) (per curiam); citing *Reynolds v. Powell*, 370 F.3d 1028, 1031 (10th Cir. 2004) and *LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993)).

Whether Defendants Lashbrook and Harris were aware of the alleged substantial risk of serious harm and failed to take reasonable measures to avoid the harm is a closer call. Plaintiff alleges that these defendants were aware of the dangerous condition and failed to remedy it, without providing any factual allegations to support this claim. However, at this juncture, this Court will not "require[] that [Plaintiff] plead facts and, even before discovery, 'show that [defendants] acted with a sufficiently culpable state of mind'" because "[p]roof comes later, not at the complaint stage." *Pyles*, 771 F.3d at 410 (citing *Smith v. Knox Cnty. Jail*, 666 F.3d 1037, 1039 (7th Cir. 2012) (per curiam); *Bennett v. Schmidt*, 153 F.3d 516, 518–19 (7th Cir. 1998)).

For these reasons, Count 1 will proceed against Defendants Harris and Lashbrook.

6

## Count 2

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2006) (*per curiam*). To state a claim, a prisoner must show that: (1) he suffered from an objectively serious medical need; and (2) state officials acted with deliberate indifference to the prisoner's medical need, which is a subjective standard. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" where it has either "been diagnosed by a physician as mandating treatment" or where the need is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997). The severe burn injury described in the Complaint satisfies the objective component for screening purposes.

The Complaint must also satisfy the subjective component of these claims. To do so, the Complaint must suggest that the defendants exhibited deliberate indifference to Plaintiff's serious medical need. Deliberate indifference is established when prison officials "know of and disregard an excessive risk to inmate health" by being "'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists'" and "'draw[ing] the inference.'" *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (quoting *Farmer*, 511 U.S. at 834).

Plaintiff has failed to satisfy the subjective component with the allegations presented in the Complaint. He does not claim that he failed to receive the appropriate treatment for his burn, only that he experienced some inconvenience in getting to the Health Care Unit every day for the short period during which he received his treatment. Whether Neff and Rogers were supposed to sign him up for the call pass line, or Lashbrook could reasonably have had him added to the list before his treatment had ended is irrelevant. Plaintiff appears to have received his treatment and

7

does not claim that it was ineffective. Because the allegations do not show that the defendants knew of and disregarded an excessive risk to Plaintiff's health by neglecting to add him to the call pass line, Count 2 will be dismissed without prejudice.

**Pending Motions**

Plaintiff has filed a Motion for Recruitment of Counsel (Doc. 3) which is **REFERRED** to United States Magistrate Judge Reona J. Daly for a decision.

Plaintiff's Motion for Service of Process at Government Expense (Doc. 4) is **DENIED** as moot. Waivers of service of summons will be issued and served on the remaining defendants as ordered below. Plaintiff is advised that it is not necessary for a litigant proceeding *in forma pauperis* to file a motion requesting service of process by the United States Marshal Service or other process server. The Clerk will issue summons and the Court will direct service for any complaint that passes preliminary review.

**Disposition**

**IT IS HEREBY ORDERED** that **COUNT 1** shall **PROCEED** against **HARRIS** and **LASHBROOK**.

**IT IS FURTHER ORDERED** that **COUNT 2** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted as against all defendants.

**IT IS FURTHER ORDERED** that **NEFF** and **ROGERS** are **DISMISSED** without prejudice from this action for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that **PINCKNEYVILLE CORRECTIONAL CENTER** and **HEALTH CARE UNIT** are **DISMISSED** with prejudice from this action for the reasons stated above.

**IT IS ORDERED** that as to **COUNT 1**, the Clerk of Court shall prepare for **HARRIS**

and **LASHBROOK**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to these defendants' places of employment as identified by Plaintiff. If these defendants fail to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on them, and the Court will require them to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Reona J. Daly** for further pre-trial proceedings. Further, this entire matter shall be **REFERRED** to United States Magistrate Judge **Daly** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**
**DATED: November 2, 2017**

s/ STACI M. YANDLE
**U.S. District Judge**